UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GABRIELLE MITCHELL,<br><br>　　　　*Plaintiff*,<br><br>　　v.<br><br>MERRICK GARLAND,<br><br>　　　　*Defendant*. | Civil Action No. 23-2412 (LLA) |

**MEMORANDUM OPINION**

Gabrielle Mitchell brings this action against Merrick Garland in his official capacity as Attorney General of the United States. Ms. Mitchell alleges that her employer, the Federal Bureau of Investigation ("the Agency"), discriminated against her, created a hostile work environment, and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Pending before the court is the Agency's motion to dismiss. ECF No. 10. For the reasons explained below, the court will grant the Agency's motion and dismiss the case.

**I.    Factual Background**

The following factual allegations drawn from Ms. Mitchell's Complaint, ECF No. 1, are accepted as true for the purpose of evaluating the motion before the court, *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). Ms. Mitchell has worked as an accountant for the Agency since August 2015. ECF No. 1 ¶ 6. She is an African American woman. *Id.* ¶ 4. At the outset of the COVID-19 pandemic in March 2020, the Agency permitted Ms. Mitchell to telework and work a compressed work schedule ("CWS") due to her high-risk status stemming from an underlying medical condition. *Id.* ¶ 7.

On October 20, 2020, Ms. Mitchell's Unit Chief, Marjorie Hashey, asked Ms. Mitchell to propose a new CWS. *Id.* ¶ 8. Later that day, Ms. Mitchell emailed a proposed CWS to Ms. Hashey and to Supervisory Accounting Analyst Nichole Remaley-Danylec. *Id.* ¶ 9. On November 3, having not received a response to her proposed CWS, Ms. Mitchell began working the new schedule and followed up with Ms. Hashey and Ms. Remaley-Danylec via email. *Id.* ¶ 10. Ms. Remaley-Danylec responded via email that Ms. Mitchell's proposed CWS had not been approved and that any hours reported outside of the existing CWS would be charged as leave. *Id.* ¶¶ 11-12. Around this time, Ms. Remaley-Danylec sent an email to her subordinates, including Ms. Mitchell, informing them that her own schedule had changed "once again" due to childcare needs. *Id.* ¶ 13. Ms. Mitchell also had scheduling concerns related to childcare. *Id.* ¶ 14. Ms. Mitchell "felt she was being treated differently" with respect to her schedule and communicated those concerns to management. *Id.*[1]

On November 22, Ms. Mitchell asked Ms. Remaley-Danylec via text message if she could change her telework day that week from Thursday to Monday. *Id.* ¶ 15. After not receiving a response, Ms. Mitchell sent another text message stating that she felt that she was being treated unfairly. *Id.* ¶ 17. The following day, Ms. Mitchell forwarded her request about switching her telework day to Ms. Hashey. *Id.* ¶ 18. Ms. Hashey approved the request, but also informed Ms. Mitchell that she would have "to work on holidays and her holiday hours would be limited." *Id.* ¶ 19. Ms. Mitchell emailed Ms. Remaley-Danylec to tell her that Ms. Hashey had approved her request. *Id.* ¶ 20. Ms. Remaley-Danylec responded by denying the request but informing

---

[1] Where a filing is inconsistently numbered or paginated, *see, e.g.*, ECF No. 1 ¶¶ 13, 14, the court nonetheless cites to the document as filed.

Ms. Mitchell that she could take leave or switch her in-office day from Monday to Friday. *Id.* ¶ 21.

On November 24, Ms. Remaley-Danylec emailed Ms. Mitchell asking to schedule her wrap-up meeting for fiscal year 2020. *Id.* ¶ 22. The following day, Ms. Mitchell emailed Section Chief Kamile Narine, with Ms. Hashey and Ms. Remaley-Danylec copied, asking for a meeting to address her alleged disparate treatment. *Id.* ¶ 23. The same day, Ms. Mitchell was notified that her wrap-up meeting was being cancelled for a second year in a row. *Id.* ¶ 24.

On December 2, Ms. Mitchell met with Mr. Narine to discuss the alleged disparate treatment ("being denied her wrap-ups, being told to work on federal holidays, and Ms. Remaley-Danylec's and Ms. Hashey's failure to provide timely responses"). *Id.* ¶ 27. On December 8, Ms. Hashey and Ms. Remaley-Danylec conducted Ms. Mitchell's wrap-up meeting for fiscal year 2020. *Id.* ¶ 28. Ms. Mitchell claims that her supervisors relied on incorrect, pretextual information to give her an unfavorable rating. *Id*. On that same day, Ms. Remaley-Danylec admonished Ms. Mitchell for entering "advisements" in the system that tracks attendance and hours, although Ms. Mitchell alleges that this had been her longtime practice without issue. *Id.* ¶ 29.

On December 28, Ms. Hashey changed Ms. Mitchell's schedule without notifying her. *Id.* ¶ 30. On February 10, 2021, Ms. Remaley-Danylec changed Ms. Mitchell's permitted telework hours; while Ms. Mitchell had previously been allowed to telework from 5:00 a.m. to 10:00 p.m., she was now limited to 6:00 a.m. to 6:00 p.m. *Id.* ¶ 33. Also around this time, Ms. Mitchell discovered that she had been required to take a telework training in September 2020 that other employees had not been required to take. *Id.* ¶ 31.

Ms. Mitchell also alleges that, between March 2020 and March 2021, Ms. Hashey and Ms. Remaley-Danylec routinely deleted her emails without reading them. *Id.* ¶ 32.

## II.   Procedural History

In August 2023, after exhausting her administrative remedies, ECF No. 1 ¶ 3, Ms. Mitchell brought this action against Attorney General Garland in his official capacity, alleging (1) disparate treatment based on race; (2) hostile work environment; and (3) retaliation. ECF No. 1. The Agency filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), ECF No. 10, which has now been fully briefed, ECF Nos. 12, 14. For the reasons explained below, the court will grant the Agency's motion to dismiss.

## III.   Legal Standard

Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 622, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion under Rule 12(b)(6), a court accepts all factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). Although the plausibility standard does not require "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will "'naked assertions' devoid of 'further factual enhancement'" suffice. *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). While a Title VII plaintiff need not establish a prima facie case of discrimination at the pleading stage, *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11

4

(2002), she must allege sufficient facts beyond mere legal conclusions to allow the court to draw a reasonable inference of discrimination from the complaint. "If a Title VII plaintiff fails to plead 'sufficient factual matter' to state a discrimination claim that is 'plausible on its face,' then the district court should dismiss the case before discovery." *Chambers v. District of Columbia*, 35 F.4th 870, 878 (D.C. Cir. 2022) (en banc) (quoting *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015)).

### IV.  Discussion

Ms. Mitchell alleges that the Agency violated Title VII by discriminating against her based on her race, creating a hostile work environment, and retaliating against her for engaging in a protected activity. ECF No. 1. The complaint cannot withstand the Agency's motion to dismiss because it fails to raise plausible claims. *See Chambers*, 35 F.4th at 878.

#### A.  Disparate Treatment

Under Title VII, it is unlawful for an employer to discriminate against an employee with respect to their "compensation, terms, conditions, or privileges of employment" because of their "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff bringing a claim under Section 2000e-2(a)(1) must plead that they belong to a protected class, that they suffered an adverse employment action, and that a causal connection exists between their protected characteristic and the adverse employment action. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).

Ms. Mitchell alleges disparate treatment on the basis of race, asserting that the Agency refused to respond to her communications, required her to work on holidays, required her to complete a training that others were not required to complete, and changed her schedule without notice. ECF No. 1 ¶ 38. There is no dispute that Ms. Mitchell is African American and thus

belongs to a protected class. *Id.* ¶ 4. Accordingly, the court focuses on whether Ms. Mitchell has alleged an adverse employment action and a causal connection between that action and her race.

### 1.      Adverse employment action

The Supreme Court recently clarified the standard for an actionable adverse employment action in *Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024). There, the Court explained that a plaintiff must simply allege "some harm" regarding the terms and conditions of her employment to support a disparate treatment claim. *Id.* at 972. That holding is largely consistent with the D.C. Circuit's recent en banc decision in *Chambers*, in which the Circuit held that a plaintiff need only show some change with respect to the terms and conditions of employment (as opposed to a heightened "objectively tangible harm") to plead an adverse action.[2] 35 F.4th at 874-75. Although the parties briefed this case before *Muldrow* was decided, it applies. *See Thorpe v. Hous. Auth. of Durham*, 393 U.S. 268, 281 (1969) (explaining that courts must apply the law in effect at the time of decision); *see also Overseas Shipholding Grp., Inc. v. Skinner*, 767 F. Supp. 287, 291 (D.D.C. 1991) ("[T]he Court must review the agency's decision under the lens of current legal precedent.").

The Agency argues that the adverse-action standard enunciated in *Chambers* (and now *Muldrow*) does not apply because Ms. Mitchell is covered by the federal-sector provisions of Title VII, whereas the plaintiffs in *Chambers* (and *Muldrow*) were not. ECF No. 10 at 6-7. In the Agency's view, a federal-employee plaintiff may only bring a claim based on an adverse "personnel action" as defined by the Civil Service Reform Act, 5 U.S.C. § 2302(a)(2)(A)(i)-(xi).

---

[2] *See Muldrow*, 144 S. Ct. at 979-80 (Kavanaugh, J., concurring) ("As I see it and as the D.C. Circuit saw it [in *Chambers*]," "[t]he discrimination is harm. The only question then is whether the relevant employment action changes the compensation, terms, conditions, or privileges of employment. . . . I expect that the [majority's] approach and my preferred approach will land in the same place and lead to the same result").

ECF No. 10 at 5-6. The court disagrees. The D.C. Circuit has consistently held that the private- and federal-sector provisions of Title VII should be construed similarly. *See Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007); *Singletary v. District of Columbia*, 351 F.3d 519, 523-24 (D.C. Cir. 2003); *see also Bain v. Off. of the Att'y Gen.*, 648 F. Supp. 3d 19, 54 (D.D.C. 2022) ("[*Chambers*] did not so much as hint that the private-sector and federal-sector discrimination provisions should no longer be construed alike. If anything, it affirmed the status quo."). Moreover, the *Chambers* Court overruled *Brown v. Brody*, 199 F.3d 446 (D.C. Cir. 1999), which itself involved a federal-sector employee. *See Chambers*, 35 F.4th at 882. This suggests that the *Chambers* Court intended its interpretation of the adverse action requirement to apply to all Title VII discrimination claims, not just those brought by private-sector employees. *See id.*

The adverse actions that Ms. Mitchell alleges—her supervisors' refusing to respond to her messages in a timely manner, requiring her to work on holidays, requiring her to complete a training that others did not have to complete, giving her an unfavorable performance rating, and changing her schedule without notice—meet the standard of "some harm" to the terms and conditions of her employment under *Muldrow*, because they represent changes that negatively impact her work environment. ECF No. 1 ¶ 38; *Muldrow*, 144 S. Ct. at 972. Giving her the benefit of all reasonable inferences, as this court must when evaluating the Agency's motion to dismiss, *see Ashcroft*, 556 U.S. at 678, the court concludes that Ms. Mitchell has sufficiently alleged adverse actions that affected the terms and conditions of her employment. ECF No. 1 ¶ 38.

## 2. Causal connection

Ms. Mitchell must also show a causal connection between her protected status and the alleged adverse actions. *See Baloch*, 550 F.3d at 1196. One way that a plaintiff can satisfy this burden is "by showing 'that she was treated differently from similarly situated employees who are

not part of the protected class.'" *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014) (quoting *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005)).  While the burden is "not onerous" at the motion-to-dismiss stage, it requires more than the bald assertion that there is a similarly situated comparator.  *SS & T, LLC v. Am. Univ.*, No. 19-CV-721, 2020 WL 1170288, at *4 (D.D.C. Mar. 11, 2020) (quoting *Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 467 (D.C. Cir. 2017)).  "A plaintiff's assertion that [she] is similarly situated to other[s] . . . is just a legal conclusion—and a legal conclusion is never enough." *Id.* at *5 (second alteration in original) (quoting *Bekkem v. Wilkie*, 915 F.3d 1258, 1275 (10th Cir. 2019)); *see Keith v. U.S. Gov't Accountability Off.*, No. 21-CV-2010, 2022 WL 3715776, at *3 (D.D.C. Aug. 29, 2022) (granting a motion to dismiss for failure to state a claim and reasoning that "to plausibly plead the causation element [through similarly situated comparators], [the plaintiff] must allege some facts to ground a reasonable inference that the plaintiff was in fact similarly situated to comparator employees.").

Ms. Mitchell does not sufficiently allege that similarly situated employees of a different race were treated more favorably, nor does she allege any other facts that would support a reasonable inference of discrimination.  To the contrary, the complaint rests on conclusory statements of the legal standard that the court need not credit.  *Ashcroft*, 556 U.S. at 678.  Specifically, Ms. Mitchell alleges in her complaint that "[s]imilarly situated employees outside of [her] protected class did not experience adverse employment actions," ECF No. 1 ¶ 39, but she provides no facts about the identity, race, or other characteristics of any alleged comparator. Courts have routinely concluded that such bare assertions are insufficient to survive a motion to dismiss.  *See, e.g.*, *SS & T, LLC*, 2020 WL 1170288 at *4 ("SS & T cannot merely allege that similarly situated leaseholders not owned by persons of Indian-descent were treated differently

and then offer 'nothing more in the way of specific facts or allegations associated with this claim.'" (quoting *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 239 (D.D.C. 2007))).

The closest Ms. Mitchell comes to alleging facts about a similarly situated comparator is her reference to the flexibility Ms. Remaley-Danylec was afforded in scheduling due to her childcare needs when Ms. Mitchell also "was needed at home to provide childcare." ECF No. 1 ¶¶ 13-14. But these facts are insufficient to create an inference of discrimination. First, Ms. Mitchell does not identify Ms. Remaley-Danylec's race, and it is essential that the similarly situated comparator not share the plaintiff's protected trait. *See Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 296-97 (D.C. Cir. 2015) ("Evidence suggesting that the employer treated similarly situated persons who were *not the same race as the plaintiff* more favorably than it treated the plaintiff can . . . be probative of discrimination." (emphasis added)). Next, as a Supervisory Accounting Analyst, Ms. Remaley-Danylec is in a supervisory position and Ms. Mitchell is not. *See id.* at 301 ("A plaintiff must also demonstrate that 'all of the relevant aspects of his employment situation were nearly identical to those of the other' employee." (brackets omitted) (quoting *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999))). Finally, Ms. Mitchell does not allege that she affirmatively asked to change her schedule due to concerns about childcare and was treated differently than Ms. Remaley-Danylec. *See Brady v. Off. of the Sergeant at Arms*, 520 F.3d 490, 495 (D.C. Cir. 2008) (explaining that disparate treatment claims require a showing that the employer treated employees differently in the "same factual circumstances"); *Burley v. Nat'l Passenger Rail Corp.*, 33 F. Supp. 3d 61, 75 (D.D.C. 2014) (finding no disparate treatment in part because there were "differentiating or mitigating circumstances" that distinguished the employer's treatment of comparators (quoting *Kassim v. Inter-Cont'l Hotels Corp.*, 997 F. Supp. 2d 56, 64 (D.D.C. 2013))), *aff'd* 801 F.3d at 290. Accordingly, Ms. Mitchell's allegations of a causal

connection between any adverse employment action and her race are too threadbare to survive the Agency's motion to dismiss.

### B.     Hostile Work Environment

To establish a hostile work environment claim, the plaintiff must show that her "workplace is permeated with 'discriminatory intimidation, ridicule and insult' that is 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (citation omitted) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)).  "A few isolated incidents of offensive conduct do not amount to actionable harassment." *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002).  The incidents must be "adequately connected to each other . . . as opposed to being an array of unrelated discriminatory or retaliatory acts."  *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011).  In determining whether a plaintiff can proceed with a hostile work environment claim, the court "looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance."  *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013) (quoting *Baloch*, 550 F.3d at 1201).

Ms. Mitchell alleges a hostile work environment resulting from the accumulation of actions such as "refusing to respond to Plaintiff's messages, requiring Plaintiff to work on holidays, making Plaintiff receive training other employees were not required to receive, and altering Plaintiff's schedule." ECF No. 1 ¶ 44.  The Agency responds that Ms. Mitchell's allegations are "commonplace workplace situations" that do not rise to the level of a severe or pervasive environment.  ECF No. 10 at 9-10.  The court agrees with the Agency.

"The standard for hostile work environment cases is a 'high bar.'" *Montgomery v. McDonough*, No. 22-CV-1715, 2024 WL 1344443, at *12 (D.D.C. Mar. 29, 2024) (quoting *Joyner v. Morrison & Foerster LLP*, No. 20-CV-1440, 2023 WL 6313194, at *7 (D.D.C. Sept. 27, 2023)). Instances of sufficiently severe or pervasive conduct have included yelling offensive racial epithets, *see Ayissi-Etoh*, 712 F.3d at 577, and forcing an employee to work in an unheated storage room for over a year, *see Singletary*, 351 F.3d at 528 (reversing denial of plaintiff's hostile work environment claim and remanding). Ms. Mitchell's allegations do not clear this high bar. Instead, her allegations are more akin to *Mohmand v. Broadcasting Board of Governors*, No. 17-CV-618, 2018 WL 4705800 (D.D.C. Sept. 30, 2018), where the court found that the plaintiff's claims about a scheduling change, being criticized in front of coworkers, and being excluded from meetings fell short of alleging a hostile work environment. *Id.* at *6-7; *see also Bell v. Fudge*, No. 20-CV-2209, 2022 WL 4534603, at *6 (D.D.C. Sept. 28, 2022) (dismissing hostile work environment claim based on a critical performance review, denial of requested credit hours, and change in telework days). But even if Ms. Mitchell's allegations were sufficient (and, to be clear, they are not), Ms. Mitchell does not connect her alleged mistreatment to her race, which independently dooms her hostile work environment claim. *See Bell*, 2022 WL 4534603, at *7 ("Workplace slights unconnected to any protected status do not create a hostile work environment actionable under Title VII.").

### C.     Retaliation

A plaintiff must allege three elements for a Title VII retaliation claim: (1) that she engaged in protected activity (i.e., "opposed any practice" unlawful under Title VII or "made a charge, testified, assisted, or participated" in an "investigation, proceeding, or hearing," 42 U.S.C. § 2000e-3(a)); (2) that she suffered a "materially" adverse action that "might have 'dissuaded a

reasonable worker from making or supporting a charge of discrimination'";[3] and (3) that there is a causal connection between the protected activity and adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-69 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). The court concludes that Ms. Mitchell has sufficiently alleged that she engaged in protected activity, but that her allegations of materially adverse action fall short of what the law requires.

Ms. Mitchell contends that she engaged in protected activity when she emailed Mr. Narine, Ms. Hashey, and Ms. Remaley-Danylec asking for a meeting to discuss her alleged disparate treatment. ECF No. 1 ¶¶ 23, 49; ECF No. 12 at 8. The Agency argues that this allegation is too vague, ECF No. 10 at 11, but the court disagrees. Opposing discrimination—either by complaining to a supervisor or by participating in a formal EEO process—constitutes protected activity. 42 U.S.C. § 2000e-3(a); *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006). "[N]o 'magic words' are required," but the employee "must in some way allege unlawful discrimination, not just frustrated ambition." *Broderick*, 437 F.3d at 1232. Ms. Mitchell's allegation that she "requested a meeting to address the ongoing disparate treatment," ECF No. 1 ¶ 23, easily satisfies this standard. *See Nunnally v. District of Columbia*, 243 F. Supp. 3d 55, 67 (D.D.C. 2017) (finding an email to supervisors to be protected activity).

Turning to the materially adverse action requirement, Ms. Mitchell alleges that the Agency retaliated against her by failing to respond to her messages, giving her an unfavorable performance review, requiring her to work on holidays, and changing her schedule. ECF No. 1 ¶ 50; *see* ECF

---

[3] While the *Chambers* and *Muldrow* Courts disposed of a higher standard for discrimination claims, both Courts clarified that the threshold did not change for retaliation claims, and thus the "materially adverse" standard remains. *Chambers*, 35 F. 4th at 877; *Muldrow*, 144 S. Ct. at 970-71.

No. 12 at 8. The Agency argues that the alleged actions are "trivial workplace matters" that do not meet the standard for retaliation. ECF No. 10 at 11. The court agrees with the Agency.

"Mere idiosyncrasies of personal preference are not sufficient to state an injury." *Broderick*, 437 F.3d at 1233 (quoting *Brody*, 199 F.3d at 457). A lack of timely or responsive communication is generally not considered a materially adverse action. *See Allen v. Napolitano*, 774 F. Supp. 2d 186, 200 (D.D.C. 2011) (granting a motion to dismiss plaintiff's retaliation claim based on a lack of timely responses from supervisors). Unfavorable performance reviews are only considered materially adverse if they affect the employee's "position, grade level, salary, or promotion opportunities," which Ms. Mitchell does not allege. *Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009) (quoting *Baloch*, 550 F.3d at 1199). And while scheduling changes, including holiday assignments, can constitute materially adverse actions, their materiality depends on their context. *See Burlington*, 548 U.S. at 69 ("A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children."). Such context is sorely lacking here: Ms. Mitchell alleges that her new schedule was "unfavorable," ECF No. 12 at 7, but does not explain why. Without more facts to suggest that the holiday assignment or schedule change were significant enough—in the context of Ms. Mitchell's circumstances—to dissuade a reasonable worker from making a claim of discrimination, these actions are not materially adverse for purposes of retaliation. *Id.*; *see Neratko v. Frank*, 31 F. Supp. 2d 270, 296 (W.D.N.Y. 1998) (concluding that plaintiff's holiday work assignment did not constitute a materially adverse action for purposes of retaliation).

## V. Conclusion

For the foregoing reasons, the court will issue a contemporaneous order granting Defendant's motion to dismiss, ECF No. 10.

/s/ Loren L. AliKhan
LOREN L. ALIKHAN
United States District Judge

Date: July 1, 2024